Harry ROSEN and Rose Rosen, Appellees,

v.

UNITED STATES of America, Appellant,

No. 13351.

United States Court of Appeals Third Circuit.

Argued Dec. 13, 1960.

Decided March 24, 1961.

Joseph Kovner, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Joseph Kovner, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., Hubert I. Teitelbaum, U. S. Atty., John F. Potter, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

Sidney Hoffman, Pittsburgh, Pa. (Jerome C. Bachrach, Pittsburgh, Pa., on the brief), for appellees.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is the third time that a United States Court of Appeals has been required to decide whether increment yielded by an "Investment Contract" of Investors Syndicate is taxable as long term capital gain or as ordinary income. In 1944 the Court of Appeals for the Sixth Circuit held that such increment was taxable as long term capital gain. Commissioner of Internal Revenue v. Caulkins, 144 F.2d 482. In 1959 the Court of Appeals for the Ninth Circuit refused to follow the Caulkins decision and held that gain accrued under such a contract was a type of interest taxable as ordinary income. Commissioner of Internal Revenue v. Morgan, 272 F.2d 936.

In the present case the taxpayer computed and paid a tax on his profit on an Investors Syndicate contract as capital gain. Later, he paid under protest the additional amount which the Commissioner found to be owed by treating this item as ordinary income. The taxpayer then brought the present action for a refund of this additional payment. The district court followed the Caulkins case and allowed the refund. This appeal followed.

In 1941 the taxpayer acquired two "Investment Contracts" from Investors Syndicate. In each contract the investor promised to pay Investors Syndicate $650 per year for fifteen years, a total of $9,750. The company in turn promised to pay him $12,500 at the end of the fifteen years. The investor was entitled to accelerate his payments. The taxpayer did so, completing the payment of $9,750 under each contract in 1948. When the company's obligation matured in 1956 it paid the taxpayer the agreed total of $25,000 on the contracts plus $2,360.96 in "additional credits".

In addition to its agreed maturity value an Investment Contract of Investors Syndicate has a predetermined cash surrender value before maturity. This value increases from year to year. It is less than the total of payments required

throughout the first six years of the contract, but greater than this total after the seventh year. On the death or disability of the contract holder before age sixty all payments made by him are refundable with three per cent compound interest. If an investor discontinues his payments at any time, he may obtain a "paid-up" certificate in an appropriate amount.

"Additional credits" are awarded contract holders from year to year at the discretion of the directors of the company. However, the directors are stimulated to make such awards by a contractual requirement that no dividend shall be paid on the stock of Investors Syndicate in any year in which the contract holders have not received credits of at least one-half of one per cent of the cash surrender value of their contracts.

We think it is clear that the difference between the $9,750 paid by the taxpayer and the contract's predetermined maturity value of $12,500, as realized by the taxpayer, constituted interest and, therefore, would normally be taxed as ordinary income. Similarly, the "additional credits" do not appear to be significantly different from dividends such as are commonly paid by mutual insurance companies. They too would normally constitute ordinary income. Thus, it seems anomalous to tax either of these items of increment as capital gain.

 Because the taxpayer does not concede that the discount here is essentially interest, some amplification of this preliminary point is appropriate. We start with the accepted definition of interest as "compensation for the use or forbearance of money". Deputy v. du Pont, 1940, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416. Nearly twenty years ago Circuit Judge Goodrich, speaking for this court, characterized original issue discount in the case of a bond as "interest which accrues over the life of the bond and is payable at the maturity of the principal obligation". American Smelting & Refining Co. v. United States, 3 Cir., 1942, 130 F.2d 883, 885. Accord F. Rodney Paine, 1954, 23 T.C. 391, reversed on other grounds 8 Cir., 1956, 236 F.2d 398. We see no escape from the conclusion that, in the present case, the difference between the total amount paid by the taxpayer and the larger sum agreed to be paid and in fact paid to him at the maturity of the contract is essentially the same as original issue discount on a bond in its character as compensation for the use of money which the contract holder has paid to the company from time to time. Indeed, even in the Caulkins case, which concludes, for other reasons, that such increment is to be taxed as capital gain, the court recognizes that the gain is essentially a realization of interest income. 144 F.2d at page 484. We have not overlooked an argument of the taxpayer that because the cash surrender value of the investment contract during the first six of its fifteen years was less than the total of payments required, this contract is different from an ordinary advance of money at interest. However, the terms of even an ordinary loan may vary from an agreement that no repayment of principal can be demanded until maturity to one in which the full amount advanced is subject to demand at any time. Such variations do not change the character of increment as compensation for the use of money.

In these circumstances, in the absence of some overriding statutory mandate to the contrary, the increment in the nature of original issue discount would be taxed as interest under Section 61 of the 1954 Code, 26 U.S.C. § 61. By parity of reasoning, that section would also control the taxation of the dividend-like component of the taxpayer's gain, the so-called "additional credits". However, the taxpayer argues that there is such an overriding statute, Section 1232(a) (1) of the 1954 Code, formerly Section 117

(f) of the 1939 Code.[1] That section provides:

> "*Retirement.*—Amounts received by the holder on retirement of * * * bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form * * *)."

It is not disputed that the instruments here involved are "evidences of indebtedness". Willcuts v. Investors' Syndicate, 8 Cir., 1932, 57 F.2d 811, certiorari denied 287 U.S. 618, 53 S.Ct. 18, 77 L.Ed. 537. In addition, it is stipulated that the contracts in suit were in registered form and constituted capital assets. Thus, the question to be decided is whether the requirement of Section 1232(a)(1) that amounts received on retirement of certain "evidences of indebtedness shall be considered as amounts received in exchange therefor" is tantamount to saying that the entire increment realized in such an exchange must be taxed as capital gain rather than ordinary income.

The statute does not say that all increment thus realized must be taxed as capital gain. Whether it means that can best be determined by looking at the normal and accepted tax treatment of increments realized on the actual sale or exchange of capital assets, to which Section 1232(a)(1) analogizes the retirement of evidences of indebtedness. Since we are here dealing with fully earned increments which are distributed at the maturity of a certificate of indebtedness, we look for guidance to cases in which the increment that enlarges the price of a capital asset on an actual sale or exchange is also fully earned and accrued.

It often happens that interest-bearing notes or bonds are sold for more than their face value at a time when interest has accrued and is overdue. In such cases it is held that the part of the selling price which is attributable to accrued interest is taxable as ordinary income. Fisher v. Commissioner, 6 Cir., 1954, 209 F.2d 513, certiorari denied 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136; Warner A. Shattuck, 1955, 25 T.C. 416. The same result has been reached where notes issued at a discount have been sold shortly before maturity at substantially more than the price of original issue but slightly less than maturity value. F. Rodney Paine, supra. A situation which is analogous, though it does not involve interest, arises when a partner's share in a partnership is sold for a price which includes the value of fees fully earned by the partnership but not yet collected. Tunnell v. United States, 3 Cir., 1958, 259 F.2d 916. Accord United States v. Snow, 9 Cir., 1955, 223 F.2d 103.[2]

These cases exemplify what Circuit Judge Kalodner, speaking for this court, has accurately characterized as the "general rule * * * that a right to receive ordinary income, produced by a capital asset, is not transmuted into a capital asset by the sale or assignment of the capital asset together with the right to receive the ordinary income." Tunnell v. United States, supra, 259 F.2d at page 919. We find no

---

1. The 1954 Code applies here because the taxable event, the retirement of taxpayer's contracts, occurred in 1956.

2. The cited partnership cases, and the present case as well, should be distinguished from those where the value of prospective earnings or income not fully accrued is reflected in the price paid for capital assets. For tax purposes such anticipated earnings, unlike income already accrued, are treated as merely enhancing the value of the income producing property and, therefore, are not differentiated from the capital gain realized in the sale of the underlying capital asset. Such a case is Metropolitan Building Co. v. Commissioner, 9 Cir., 1960, 282 F.2d 592.

reason to believe that Section 1232(a) (1) has abrogated that general rule in the retirement cases it covers. Rather, as Circuit Judge Pope convincingly demonstrates in the Morgan case, that section serves to assure capital gains treatment of a different kind of increment which is realized by a taxpayer who has acquired evidences of indebtedness at a low cost basis, either because their value was then in doubt or because they were received in a tax free exchange for low-basis property, and has held them until their retirement at face value. Before the adoption of Section 117(f), now Section 1232(a) (1), it had been said that such increment must be taxed as ordinary income because a retirement was not a sale or exchange. See Watson v. Commissioner, 1932, 27 B.T.A. 463, 465. Thus, the section in question was intended to insure capital gains treatment of an increment which was quite different in kind from interest or dividends. Construing the language of the statute in the light of this limited purpose and of the tax treatment normally accorded gain in the nature of interest or dividends realized on sales and exchanges of capital assets, we reach the conclusion that Section 1232(a) (1) does not call for capital gains treatment of the kind of increment we are now considering. Cf. Allen Tobey, 1956, 26 T.C. 610. We shall follow the Morgan case rather than the Caulkins case.

■ Even so, the taxpayer has one other contention. He says that he is entitled to rely upon the Caulkins case because of the Commissioner's acquiescence in that decision on December 25, 1944, even though that acquiescence was withdrawn on December 31, 1954. But the taxpayer acquired the present evidences of indebtedness in 1941 before the Caulkins acquiescence and even before that decision itself. He realized the income in controversy in 1956, several years after the Commissioner's acquiescence in Caulkins had been withdrawn. The taxpayer argues that "without the public acquiescence, he might well have redeemed his certificates and put his money in some other investment whose capital nature was still unchallenged". But he did not follow that course between 1954 and 1956 after the withdrawal of acquiescence. Moreover, the withdrawal of his investment in the early years, when the acquiescence was first announced, would have been disadvantageous because the cash surrender value was less than the amount paid in. Also to be considered is the fact that any other form of lending or investment in dividend-producing stock would itself have yielded earnings taxable as ordinary income.

We can see only one other possibility of detriment to the taxpayer as a result of the Commissioner's acquiescence in Caulkins. Had the taxpayer anticipated the ultimate treatment of his yearly increments as ordinary income he might have reported this gain annually, thus spreading his tax burden over a number of years rather than experiencing all of it in 1956. Here again, his failure to take any such step after the 1954 withdrawal of the acquiescence refutes the argument that the acquiescence caused him to refrain from this step earlier. In the circumstances we find no substantial basis for or equity in the taxpayer's claim of detrimental reliance upon the Commissioner's ten year acquiescence in the Caulkins decision.

For these reasons the judgment of the District Court will be reversed.