304 F.2d 835
 62-2 USTC P 9560
 UNITED STATES of America, Appellant,
v.
O. D. HARRISON and wife, Jennie L. Harrison; Addison O. Wood
and wife, JoannaG. Wood; and Edward H. Jackson and
wife, Margaret J. Jackson, Appellees.
 No. 19059.
 United States Court of Appeals Fifth Circuit.
 June 22, 1962, Rehearing Denied Sept. 27, 1962.
 
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D.C., T. Fitzhugh Wilson, U.S. Atty., Shreveport, La., Joseph Kovner, I. Henry Kutz, Attys., Dept. of Justice, Washington, D.C., for appellant.
 Leon O'Quin, Thomas A. Harrell, Shreveport, La., for appellees, Blanchard, Goldstein, Walker & O'Quin, Shreveport, La., for counsel.
 Before RIVES, BROWN, and WISDOM, Circuit Judges. WISDOM, Circuit judges.
 
 
 1
 This action for tax refunds presents the question whether amounts of original issue discount or interest received upon retirement of corporate bonds are taxable as capital gain or ordinary income.
 
 
 2
 In 1952 the taxpayers purchased original issue discount bonds due to mature in series over the next five years. As the bonds were redeemed, the taxpayers reported their gain as long-term capital gain. They rely on Section 117(f) of the Internal Revenue Code of 1939 and Section 1232(a) of the 1954 Code which provide that amounts received by the holder upon the retirement of bonds shall be considered as 'amounts received in exchange therefor.'[1] The Government asserts that this provision does not require capital gains treatment of amounts received on the redemption of bonds but merely permits it; that the gain received by the taxpayers is in the nature of accrued interest on the capital invested and is taxable as regular income. Courts of Appeals in three circuits have ruled on this question. Commissioner v. Caulkins, 6 Cir., 1944, 144 F.2d 482 held that the statute compelled capital gains treatment of the amounts received on the redemption of a bond. Commissioner v. Morgan, 9 Cir., 1959, 272 F.2d 936 and Rosen v. United States, 3 Cir., 1961, 288 F.2d 658 rejected the result reached in Caulkins, held that capital gains taxation is not compulsory under the statute, and imposed regular income taxes on the gains in question. See also Jaglom v. Commissioner, 2 Cir., 1962, 303 F.2d 847, citing Morgan and Rosen with approval, and holding that the portion of the proceeds from the 'flat' sale of defaulted bonds which is allocable to interest accrued while the taxpayers held the bonds is taxable as ordinary income. We agree with the Morgan and Rosen interpretation[2] and hold that the portion of the taxpayers' receipts representing the original issue discount must be taxed as regular income.
 
 
 3
 The facts of the case are not disputed. The taxpayers purchased second mortgage bonds with a face value of $404,850. They paid $300,000, leaving an original issue discount of $104,850, or 25.9 per cent of the face value. The discount represented a purchase bonus of $50,000 and interest at three and three-quarters per cent until maturity. The purchase agreement provided that if the corporation did not redeem the bonds at maturity it would pay interest at the rate of five per cent. None of the taxpayers had any interest in the corporation other than their investment in the bonds. They held the bonds until maturity, and the bonds were redeemed as they matured until 1957 when the parties agreed to postpone the redemption of a portion of the bonds maturing that year. The corporation amortized the original issue discount over the life of the bonds and deducted the amount allocated to each year as an interest expense.
 
 
 4
 The taxpayers hitch their wagon to a literalistic construction of the statutory term, 'in exchange therefor'. Under Section 1222(3) (of the 1954 Code, 26 U.S.C. 1222(3)) a long-term capital gain is defined as the 'gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income.' To qualify as a capital gain income must be received not merely in an 'exchange' but 'in exchange for a capital asset.'[3] The fact that a gain is received in an 'exchange' is a prerequisite to capital gains treatment, but it does not by itself insure such treatment. When the right to receive ordinary income is sold, the proceeds from that exchange do not qualify for capital gains treatment. Commissioner v. P. G. Lake, 1958, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743. The weight of the taxpayers' argument rests on the word 'therefor' rather than on the words 'in exchange'; they would maintain that the statute requires all the proceeds from the retirement of a bond to be treated as received in exchange for the bond which is a capital asset. This would conflict with the well established and soundly reasoned rule that when property is sold any portion of the proceeds that represents a right to receive ordinary income is taxed as such, even though the principal asset transferred is a capital asset. Commissioner v. Phillips, 4 Cir., 1960, 275 F.2d 33; Tunnell v. United States, 3 Cir., 1958, 259 F.2d 916.
 
 
 5
 As pointed out in the Morgan and Rosen opinions, section 117(f) was enacted in response to Watson v. Commissioner, 1932, 27 B.T.A. 463. Watson held that since the capital gains provisions were tied to the term 'sale or exchange', a bond retirement could not qualify. The ruling blocked capital gains treatment in cases where by the underlying tests it would be appropriate; for example, the gain received when a bond purchased at a depressed market price is redeemed at par. The gain realized from such a transaction is a form of capital appreciation that resembles the capital gain received when stock or real estate is purchased and later sold at a profit, in contrast to an original issue discount gain which represents the interest or compensation paid for the use of the money loaned. In the light of its historical setting and pertinent tax principles, the natural reading of 'in exchange therefor' is to permit capital gains treatment, not compel it. It is implausible that Congress intended by use of this language to discard other tests that regularly must be met before a gain qualifies for capital gains treatment under Section 1222(3). As we read Sections 117(f) and 1232(a), the critical words are 'in exchange'. 'Therefor' is a filler word necessary to complete the grammatical structure of the sentence. We cannot believe that Congress intended to give 'therefor' the drastic effect contended for by the appellants. Had it wished to achieve that result it doubtless would have provided expressly for capital gains treatment. The structure of the provision as it stands indicates a purpose to liken a bond retirement to a sale or exchange and subject it to the same tax treatment that a sale or exchange would entail. The reasons pointing to this conclusion are more fully discussed in the Morgan and Rosen decisions. We believe that their reasoning is sound, and we follow their lead. The proceeds in question in this litigation represent regular income and should be taxed as such.
 
 The judgment is
 
 6
 Reversed.
 
 
 7
 JOHN R. BROWN, Circuit Judge (concurring specially).
 
 
 8
 I concur but not without some misgivings. I would emphasize that we are not here dealing with the status of proceeds received upon an ordinary commercial market sale of such bonds subsequent to the time of original issuance. From the interplay of economic laws which may even defy judge-made laws, the price will fluctuate, up and down, above or below the nominal par (face) value depending on the supply of money, the demand for it, and other economic factors. See the Hanover Bank, Executor v. Commissioner, 1962, 82 S.Ct. 1080.
 
 
 9
 This pinpoints the difficulty with any broad statements such as the Court makes about a 'well established and soundly reasoned rule that when property is sold any portion of the proceeds that represents a right to receive ordinary income is taxed as such, even though the principal asset transferred is a capital asset. Commissioner v. Phillips, 4 Cir., 1960, 275 F.2d 33; Tunnell v. United States, 3 Cir., 1958, 259 F.2d 916.' Conceptually at least this is another one at odds with our consistent statement recently reiterated in Sherlock v. Commissioner, 5 Cir., 1961, 294 F.2d 863, that this Court, in contrast to some others, follows the aggregate, not the entity, theory so that taxability is not to depend on chopping up into little bits something which is whole and sold (or exchanged) as a whole.
 
 
 10
 At what stage does the original issue-discount cease to have the operative effect of additional interest for the use of money? Does a portion of it, somehow like some marine life incrust itself permanently as a barnacle on the bond? When the original-issue-holder No. 1 sells, he sells all. As between him and his vendee (Holder No. 2), would it not (except for current accrued interest) all be capital gains just as would be the sale of an ordinary promissory note? Certainly as to the next transaction-- the sale between Holder No. 2 and Holder No. 3-- all Holder No. 2 can ever hope to get is the face of the bond (and interest accruing during his ownership). If Holder No. 2 can treat it as a capital gain on a sale to Holder No. 3, why is it so implausible (as the Court says) that Congress could have intended that Holder No. 1 may treat it the same way on the redemption as he would have on a sale to No. 2 at which time he gets the same, no more, no less. The effort to look at the 'real' or 'original' nature of the gain, i.e., the difference, leads to metaphysical dialectic when one considers successive transactions in which, say between the time Holder No. 4 acquires it and Holder No. 7 sells it (at par), the market price at which No. 6 bought it was at the level of the face value less original issue discount. What changes the character of the very same number of dollars arising out of the very same contract? Indeed, as I read it, the Court in effect says the answer should be the same. 'The structure of the provision as it stands indicates purpose to liken a bond retirement to a sale or exchange and subject it to the same tax treatment that a sale or exchange would entail.'
 
 
 11
 These seemingly internal contradictions and the problems I have just barely sketched cause me to have these considerable misgivings whether our effort to make sense really makes much.
 
 
 
 [1]
 Internal Revenue Code of 1939:
 '117. Capital gains and losses * * *
 '(f) Retirement of bonds, etc.-- For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered from, shall be considered as amounts received in exchange therefor. * * *'
 (26 U.S.C.1952 et., 117.)
 Internal Revenue Code of 1954:
 '1232. Bonds and other evidences of indebtedness
 '(a) General rule.-- For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof--
 '(1) Retirement.-- Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954). * * *'
 (26 U.S.C.1958 et., 1232.)
 
 
 [2]
 This interpretation has also been recently followed by the Tax Court. See Richard B. Gibbons, 37 T.C. No. 57; David Leavin, 37 T.C. No. 73
 
 
 [3]
 'The definition of 'capital asset' is considerably broader than is justified by the rationale for capital gains and if read literally would encompass income which Congress did not intend to give the benefit of the lower capital gains tax rate. Consequently, the courts have narrowly interpreted the definition of capital assets. See, e.g., Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52, 53-54, (76 S.Ct. 20, 100 L.Ed. 29) (1955); Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265, (78 S.Ct. 691, 2 L.Ed.2d 743) (1958). A distinction has arisen between an income-producing capital asset and the income which it produces. Gains arising from the sale of such an asset which has appreciated in value are capital gains, but gains flowing from the sale of an accrued right to collect the income from such an asset are not. Thus the right to collect ordinary income is not transmuted into capital gain by its sale. See, e.g., Hort v. Commissioner, 313 U.S. 28, 31 (61 S.Ct. 757, 85 L.Ed. 1168) (1941); Commissioner v. P. G. Lake, supra, at 266 (78 S.Ct. 691). If both the income producing asset and the right to accrued income from the asset are sold together, the purchase price must be allocated between the two, only the former being a capital asset.' Jaglom v. Commissioner, 2 Cir., 1962, 303 F.2d 847