**REAL ESTATE INVESTMENT TRUST OF AMERICA et al., Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 6288.

United States Court of Appeals
First Circuit.

July 28, 1964.

Edward C. Thayer and Walter G. Van Dorn, Boston, Mass., with whom Rackemann, Sawyer & Brewster, Boston, Mass., was on brief for petitioners.

Carolyn R. Just, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Joseph Kovner, Attys., Dept. of Justice, were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for review of a decision of the Tax Court entered on October 21, 1963. The petitioners are Real Estate Investment Trust of America and its seven trustees but for purposes of this appeal only the Trust will be referred to, and that as petitioner.

The facts have been stipulated. In 1948 Boston Chamber of Commerce Realty Trust (hereinafter Realty Trust) was in arrears to the Prudential Insurance Company in the amount of $3,500,-000 unpaid principal borrowed between 1922 and 1925 to finance Realty Trust's erection of a downtown office building.

The loans were represented by two Realty Trust notes secured by a first and second mortgage on the property, a first mortgage on certain personal property within the office building and an assignment of all rents from the building. There was also owing to Prudential by Realty Trust over $500,000 unpaid interest on the two notes.

In an attempt to achieve a substantial reduction in Realty Trust's debt, on May 12, 1948 Realty Trust, Prudential and Boston Real Estate (hereinafter Boston) entered into a refinancing arrangement whereby Realty Trust agreed to execute and deliver to Prudential an extension agreement acknowledging that the principal then owed to Prudential was $3,-000,000. Realty Trust also agreed to execute and deliver to Boston a note dated May 12, 1948 in the face amount of $1,000,000 at 4 percent interest to mature on September 26, 1952 and secured by a second mortgage on the real estate, a second mortgage on the personal property within the building and a secondary assignment of the office building's rents. On its part, Boston agreed to pay, and Prudential agreed to accept, $500,000 and $200,000, without interest, on September 26, 1952 as substitution for and in satisfaction of that portion of Realty Trust's overdue debt (both principal and interest) in excess of $3,000,000. Prudential discharged its second mortgage on the real estate.

The $1,000,000 note had no interest coupons nor was it at any time in registered form. It carried with it a provision for prepayment of the face amount in whole or in part at any time. The note was acquired by petitioner in November of 1955 when Boston and several other trusts were, through the medium of a tax free exchange, consolidated into petitioner. The note was assigned to petitioner which succeeded to and acquired Boston's basis in the note.

On September 26, 1952 by agreement between Prudential, Realty Trust and Boston the maturity date of the note was extended to September 26, 1957. A further extension of the maturity date to September 26, 1959 with interest increased to 6 percent, was agreed to by Realty Trust, Prudential and petitioner upon the arrival of the September 1957 date.

On September 30, 1958, Realty Trust entered into an agreement for the sale of its land and office building to the Federal-Franklin Trust subject to the mortgages held by Prudential and petitioner and subject to the entry of a decree by the Suffolk County Probate Court approving such sale. Following the court's approval the sale was completed and the property actually conveyed on December 30, 1958 for $559,000 subject to the mortgages.

On November 25, 1958, the petitioner sold the note of May 12, 1948, which at this time had an unpaid principal balance of $749,053.41, for $719,053.41 to Fifty Associates, a Massachusetts corporation. The sale was a bona fide transaction. As of the date of the sale Realty Trust had paid to petitioner and its predecessor $250,946.59 of principal on the note thereby reducing petitioner's basis in the note to $449,053.41. In addition, Realty Trust had paid the interest specified in the note, as amended. Petitioner received on the sale of the note $270,000 in excess of its basis in the note. The note was a capital asset in the hands of petitioner and on the date of its sale had been held by the petitioner for more than six months.

A few days prior to the completion of the sale of the land and building, the prospective purchaser, Federal-Franklin Trust, requested Fifty Associates, the purchaser of the note from petitioner, to accept payment thereon. Fifty Associates agreed and on December 30, 1958, the note was paid by Federal-Franklin Trust.

On its income tax return for the taxable year ended May 31, 1959, petitioner reported the amount received in excess of its basis in the note ($270,000) as long-term capital gain. The respondent determined that the gain realized by petitioner on the sale of the note was taxable as ordinary income. In its decision the Tax Court held that the gain realized from the sale was, in fact, interest in the form

of an original issue discount and taxable as ordinary income. A deficiency was assessed in petitioner's income tax in the amount of $72,900.

Petitioner relies on the case of Commissioner of Internal Revenue v. Caulkins, 144 F.2d 482 (6th Cir. 1944) to support its contention that original issue discount is not ordinary income in the nature of interest but is instead capital gain. It argues that since the note constituted a capital asset held for more than six months a gain resulting from its bona fide sale is governed by the tax provisions of section 1222(3) of the Int. Rev. Code of 1954.[1]

In Caulkins, the taxpayer, pursuant to a contract with Investors Syndicate, received upon retirement of the "Accumulative Installment Certificate" an amount above the aggregate payments made by him. The Sixth Circuit found the excess amount to constitute interest and held the interest taxable at capital rates. The court read the then applicable statute, section 117(f), of the Int.Rev. Code of 1939, as containing a special definition of capital gains, applicable to all amounts received upon retirement of a corporate bond, including interest. This decision, however, has not gone unchallenged and attempts by later taxpayers to rely on it in seeking to have original issue discount treated as capital gain have been largely unsuccessful. The courts have either limited Caulkins to its facts, e. g., Warner A. Shattuck, 25 T.C. 416 (1955); F. Rodney Paine, 23 T.C. 391 (1954), rev'd on other grounds, Paine v. C.I.R., 236 F.2d 398 (8th Cir. 1956), or have repudiated it outright. E. g., Pattiz v. United States, 311 F.2d 947 (Ct.Cl.1963); United States v. Harrison, 304 F.2d 835

(5th Cir. 1962), cert. denied, 372 U.S. 934, 83 S.Ct. 881, 9 L.Ed.2d 765 (1963); Rosen v. United States, 288 F.2d 658 (3rd Cir. 1961); C.I.R. v. Morgan, 272 F.2d 936 (9th Cir. 1959); but see Midland-Ross Corporation v. United States, 214 F. Supp. 631 (N.D.Ohio 1963). In view of the reason advanced by petitioner for its reliance on Caulkins,[2] the decision of the court in Dixon v. United States, 224 F. Supp. 358, 361 (1963), aff'd (2d Cir. June 19, 1964), 333 F.2d 1016 is especially pertinent:

"The [Tax Court and Sixth Circuit] in Caulkins failed to realize that the gain realized from the deemed sale of a capital asset which has appreciated in value is capital gain, whereas, gain realized by income from the capital asset is ordinary income. The court, in other words, considered both the capital asset and the increment by way of interest or discount together and considered the combined amount as a capital gain."

In light of the above cited decisions, we think it obvious that Caulkins cannot be considered as the weight of authority as to the tax treatment of original issue discount. 3B Mertens, Law of Federal Income Taxation § 22.40. Rather, that case seems to have been an exception to the general rule that amounts received from original issue discounts are treated as ordinary income. See Jaglom v. C.I.R., 303 F.2d 847, 849 (2d Cir. 1962). Original issue discount is a form of interest or compensation for the use of money. See American Smelting & Refining Co. v. United States, 130 F.2d 883, 885 (3rd Cir. 1942). As such, it is taxable as ordinary income under Section 61(a) of the 1954 Code.[3] Ordi-

1. SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES.
For purposes of this subtitle—
(3) Long-term Capital Gain.—The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 6 months. * * *

2. Petitioner finds Caulkins "in point because it dealt with a taxable gain on a disposition (whether on redemption or on

sale) of a capital asset. And the decision that the gain on such a disposition, whether on redemption or (as in our case) by sale, was taxable as a capital gain is conclusive authority on a sale under the plain wording of Section 1222 (3) as in our case."

3. "§ 61. Gross Income Defined
"(a) General definition.—Except as otherwise provided in this subtitle, gross in-

nary income cannot be converted into capital gain by any sale or exchange of the right to the income, either separately or in conjunction with the property producing the income. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941); Tunnell v. United States, 259 F.2d 916 (3rd Cir. 1958).

█ In an attempt to distinguish the cases repudiating Caulkins, petitioner refers to the fact that the discount in those cases was an obvious substitute for interest while here the obligation bore a substantial, fair, independent rate of interest. That fact is of little significance, however, since original issue discount is often in the nature of *additional* interest which accrues over the life of the instrument and is payable at maturity of the principal obligation. American Smelting & Refining Co. v. United States, supra, 130 F.2d at 885 and authorities cited therein.[4]

█ As an alternative argument, petitioner contends that no original issue discount at all was involved but that the difference between the $1,000,000 face value of the note and the $700,000 which Boston paid for it was "market discount for the embarking of funds in a hazardous operation." As pointed out by the Tax Court, evidence in the record does not establish that the discount reflected anything other than compensation for the use of money loaned. The fact that the note was acquired in a three party refinancing arrangement and that the money was paid directly to Prudential rather than to Realty Trust does not mean that petitioner's predecessor did not make a loan to the maker of the note. It was a borrower-lender arrangement with the note evidencing an ordinary type of loan, secured by mortgages on real and personal property as well as by an assignment of rents.

█ In his deficiency notice the Commissioner stated that the gain was taxable as ordinary income but did not state that the reason for this was that the gain constituted interest. The Tax Court assumed such a determination had been made and gave it the benefit of a presumption, placing upon petitioner the burden of showing "that its realized gain is attributable to something other than interest." We do not, however, believe that petitioner was unfairly prejudiced by this. The case was tried on the basis of a stipulation which included the statement that the parties were not in agreement as to whether the amount received on the sale of the note should be characterized "as capital gain, as ordinary income, as interest or otherwise. * *," thus showing petitioner's awareness of the Commissioner's position at the time the case was heard. In addition, petitioner does not claim the benefit of any new evidence which would strengthen its position were the case returned to the Tax Court. Hay v. Commissioner of Internal Revenue, 145 F.2d 1000, 1007–1008 (4th Cir. 1944). As we have already stated, based upon the record and stipulation before us, the court reached the correct result.

Judgment will be entered affirming the decision of the Tax Court.

---

come means all income from whatever source derived, including (but not limited to) the following items:

\* \* \* \* \* \* \*

. "(4) Interest; \* \* \*."

4. The obligation in United States v. Harrison, supra, was a second mortgage note which carried both a stated interest rate and an original discount. See also V. David Leavin, 37 T.C. 767 (1962) where the debentures in issue carried stated interest rates and original discounts.