**COMMISSIONER OF INTERNAL REVE-
NUE v. CAULKINS.**

No. 9676.

Circuit Court of Appeals, Sixth Circuit.

July 24, 1944.

I. Henry Kutz, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and Ray A. Brown, all of Washington, D. C., on the brief), for petitioner.

Arthur T. Iverson and Hugh W. Allin, both of Detroit, Mich., for respondent.

Before ALLEN, HAMILTON, and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This case arises upon petition to review a decision of the Tax Court of the United States (1 T.C. 656), which sustained the taxpayer in reporting an increment received within the taxable year 1939 as a capital gain. The primary question is whether the excess amount received by the taxpayer over the aggregate payment made by him under a contract with Investors Syndicate constitutes ordinary income or capital gain.

The taxpayer in 1928 purchased an "Accumulative Installment Certificate" under the terms of which Investors Syndicate agreed to pay him $20,000 at the expiration of ten years, if the payments provided for therein were made. The taxpayer paid $15,043.33 on the certificate prior to November 7, 1938. On April 11, 1939, the taxpayer surrendered the certificate and received $20,000 from the company. In its information return for the year 1939, the company reported the difference between the total amount paid by the taxpayer and the $20,000 paid to the taxpayer, namely, $4,956.67, as interest paid by the company. In his income tax return for the year 1939 the taxpayer reported $4,956.67 as a long-term capital gain, taking into account in computing his net income for the year fifty per cent of the amount, or $2,478.34, upon the ground that he had held the investment certificate, a capital asset, for more than twenty-four months. 26 U.S.C.A. Int. Rev.Code, § 117.[1] The Commissioner determined a deficiency as to this item, upon

---

[1] 26 U.S.C.A. Int.Rev.Code, § 117.

"(a) Definitions. As used in this chapter—

"(1) Capital assets. The term 'capital assets' means property held by the taxpayer. * * *

"(4) Long-term capital gain. The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income;

\*     \*     \*     \*     \*

"(b) Percentage taken into account.

In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

"100 per centum if the capital asset has been held for not more than 18 months;

"66⅔ per centum if the capital asset has been held for more than 18 months but not for more than 24 months;

"50 per centum if the capital asset has been held for more than 24 months."

the ground that the increment received by the taxpayer constituted ordinary income. On petition for a redetermination by the taxpayer, the Tax Court found that the certificate was in registered form and that it was an evidence of indebtedness covered by § 117(f), 26 U.S.C.A. Int.Rev.Code, which provides:

"For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor."

The Tax Court concluded that the taxpayer had correctly reported his profit under that section.

The Commissioner contends that the difference between the total amount paid by the taxpayer and the amount received by him on the maturity of the certificate is taxable in its entirety as ordinary income, under § 22(a), 26 U.S.C.A. Int.Rev.Code.[2]

The certificate provides that in consideration of the payment by the taxpayer of $1,512 annually in advance for the period of ten years, the company, at the expiration of the period and on surrender of the certificate, will pay the sum of $20,000. At the bottom of the first page of the certificate and on the cover page are printed the figures 5½%. The company agrees in the certificate to maintain at all times first mortgages on improved real estate, cash and government bonds in an amount equal to at least $110 for each $100 of its liability under the certificate, and under all other certificates issued by the company. A table of cash or loan values is included. In the event of the death or total permanent disability of the holder, the holder or his legal representative has the option of continuing to make the agreed payments or surrendering the certificate and receiving the full amount due thereon to date, plus interest at four per cent per annum on the sums paid, compounded annually. Other provisions give the holder

certain options on the exercise of which the certificate provides for payments of certain percentages of interest, usually 5½% on the sums involved. The assistant secretary of the company testified that if payments were made on an annual basis and paid promptly with no default at all, the difference between the amount paid in and the amount received at maturity would be equal to 5½% of the amount paid in.

We agree with the Commissioner that the amendment of the Second Liberty Bond Act of September 24, 1917, c. 56, 40 Stat. 288, made by the Act of February 4, 1935, c. 5, § 6, 49 Stat. 20, 21, 31 U.S.C.A. § 757c, does not aid in solving the problem. This section provides that for the purposes of taxation, any increment in value represented by the difference between the price paid and the redemption value received for savings bonds shall be considered as interest. The Tax Court considered that this provision was apparently included for the express purpose of excluding from the capital gains provisions of § 117(f) the increment on savings bonds. However, we think that the evident design of this enactment was to extend to the savings bonds authorized to be issued in c. 5, § 6, 49 Stat. 20, 21, the exemptions from taxation which had been provided in the original Second Liberty Bond Act of September 24, 1917. Section 7 of this Act 31 U.S.C.A. §§ 747, 758, provided for certain sweeping exemptions of both principal and interest of the Second Liberty Bonds from state and federal taxes, and the provision that the increment of the saving bonds authorized in 1935 should be considered as interest was enacted for the purpose of bringing these securities within the scope of the exemptions. The amendment of the Second Liberty Bond Act has no bearing on the present controversy.

The decisive question is whether the amount received by the taxpayer falls within § 117(f), which provides that amounts received by the holder upon retirement of the securities named shall be considered as amounts received in exchange therefor. If it does, the decision of the Tax Court is correct. As pointed out in Fairbanks

[2] 26 U.S.C.A., Int.Rev.Code, § 22.
"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855, a case involving a profit received on the redemption of corporate bonds prior to the enactment of § 117(f) in 1934, the redemption before maturity of corporate bonds is not a sale and exchange of capital assets within the commonly accepted meaning of the words. The gain realized prior to 1934, the court held, was not a capital gain. Similarly, prior to 1934 losses on bonds were deducted in full, under the bad debt provisions of the statutes. Lebanon National Bank v. Commissioner, 3 Cir., 76 F.2d 792; Pacific National Bank v. Commissioner, 9 Cir., 91 F.2d 103. The Revenue Act of 1934 made a radical change in the prior law when it provided [§ 117 (f)] that amounts received on retirement of the securities listed should be calculated as capital gain or capital loss. Fairbanks v. United States, supra.

▮ The inherent difficulty in construing § 117(f) is presented in cases like this, where the amount received upon retirement of the security is calculated under the capital gains statute, although the transaction presents no true aspect of capital gain. In contrast, Cf. Rieger v. Commissioner, 6 Cir., 139 F.2d 618, in which a fifty per cent profit was made on the retirement of the certificate of claim, apart from any interest or agreed increment. Here the amount received, deducting the agreed increment, was the sum of the amounts paid in. In many cases governed by § 117(f), the most that will be paid the holder on retirement of the securities listed will be par, or the amount paid in and the agreed increment, if any. However, the certificate is plainly an "evidence of indebtedness" similar to a bond or debenture, and hence falls within the statutory group governed by § 117(f). In it the issuing company promises to pay a definite sum at a time certain. The document resembles more closely the obligations listed specifically in § 117(f) than the certificate held by this court in Rieger v. Commissioner, supra, 139 F.2d at page 621, to fall within the section. The certificate herein was found by the Tax Court to be in registered form, and the Commissioner does not contest this finding. Cf. Rieger v. Commissioner, supra, 139 F.2d at page 621; Willcuts v. Investors' Syndicate, 8 Cir., 57 F.2d 811.

While granting that the security held by the taxpayer is an evidence of indebtedness of the character described in § 117(f),

the Commissioner contends that that section was not intended to cover the gain from interest, but only capital gain. It is pointed out that the increment here is identical with interest compounded at $5\frac{1}{2}\%$ during the agreed period; that the issuing company in its information return considered it as interest, and that the certificate bears the symbols $5\frac{1}{2}\%$ in two places. The Commissioner hence urges that the increment in value of the certificate constitutes compensation for the use of the taxpayer's money, which the Supreme Court has recently stated to be interest, Cf. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, and that as such it must be taxed in its entirety as ordinary income under § 22(a).

Congress might well have made the differentiation urged by the Commissioner, since it is difficult to perceive any practical reason for taxing increment of the type involved here differently from ordinary income. The fact that the contract does not provide for equal amounts of interest to be set aside each year, available to the holder, does not affect the question. The increment is consideration paid for the use of the amounts paid in. Unfortunately for the Commissioner's contention, Congress has not made the differentiation.

▮ Where statutory standards are lacking, statutory language is to be read in its natural and common meaning. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 249, 61 S.Ct. 878, 85 L.Ed. 1310; Kales v. Commissioner, 6 Cir., 101 F.2d 35. In the present case, the promise was to pay $20,000 at the expiration of the ten-year period. Clearly $20,000 was the amount received on the retirement of the certificate, and under the plain wording of § 117(f), it was taxable as a capital gain. A provision that the increment in such cases should be taxable under § 22(a) might or might not have been wise and fair; but Congress has not enacted it, and the courts cannot supply it by judicial legislation. Because of the application of the capital gains tax to securities which on their retirement may not result in capital gain, inconsistencies and inequalities may well result from the application of § 117(f). If this is so, the correction of this defect in the operation of the statute is for Congress and not for the courts. McClain v. Commissioner, 311 U. S. 527, 530, 61 S.Ct. 373, 85 L.Ed. 319. Since the decisive question is the applica-

bility of § 117(f), Kieselbach v. Commissioner, 317 U.S. 399, 63 S.Ct. 303, 87 L. Ed. 358, and other decisions relied on which do not construe that section, while illuminating, are not controlling.

The decision is affirmed.