**EQUITABLE LIFE ASSURANCE SOCIE-TY OF THE UNITED STATES**

v.

**UNITED STATES.**

Nos. 559–58—563–58.

United States Court of Claims.
March 2, 1960.

Daniel M. Gribbon, Washington, D. C., for plaintiff. John Lord O'Brian, Washington, D. C., Robert L. Hogg and Stuart McCarthy, New York City, and Covington & Burling, Washington, D. C., were on the briefs.

Jerry M. Hamovit, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Lyle M. Turner, and Jerome Fink, Washington, D. C., were on the brief.

REED, Justice (Retired), sitting by designation.

These are cross-motions for partial summary judgment under Rule 51 of this court, 28 U.S.C.A. Plaintiff seeks recovery of income taxes paid on mortgage and promissory note prepayment charges collected from borrowers during the years 1950–1954. The Commissioner of Internal Revenue has treated those prepayment charges collected during 1950–1953 as income under § 201(c) [1] of the Internal Revenue Code of 1939, 28 U.S.C.A. § 201(c), and as to those charges collected during 1954 the same result

---

[1]. I.R.C. (1939) § 201(c) (1) "In the case of a life insurance company—(1) *Gross income.* The term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents."

was reached under § 803(a) (2) of the I.R.C. of 1954, 26 U.S.C.A. § 803(a) (2).[2]

It is our judgment that the determination of the Commissioner was correct and that the prepayment charges are within the class of items covered by the term "interest" in the definition of life insurance company gross income found in § 201(c) of the I.R.C. of 1939 and § 803(a) (2) of the I.R.C. of 1954 as it then existed.

It is common practice to include in long-term corporate promissory notes provisions imposing a prepayment charge if the borrower prepays the principal before the maturity of the loan. In plaintiff's case this prepayment charge was based on a sliding scale ranging from three percent on the principal prepaid within five years of the loan to one-quarter of one percent on the principal prepaid in the nineteenth year of a loan. Plaintiff's mortgages typically provide for a prepayment charge of one-half of one percent per annum on the amount prepaid in excess of twenty percent of the principal during the first five years of the mortgage. During the taxable years 1950 to 1954 plaintiff states that it received $3,289,822.29 in mortgage prepayment charges and $1,706,-531.00 in prepayment charges on corporate promissory notes.

The income taxation of life insurance companies presents unique problems. The cash receipts of life insurance companies consist of a return on invested funds as well as premiums and other receipts. It has long been recognized that only a small part of these total receipts resemble true income.[3] The vast bulk are accretions to reserve funds and will be returned eventually to the policyholders to indemnify them for the losses insured against. The Revenue Act of 1921[4] established the formula under which income taxation of life insurance companies is based on investment income to the exclusion of underwriting receipts. Taxable investment income was limited to "interest, dividends, and rents." While income taxation of life insurance companies was repeatedly modified over the years, it retains its basic form. See the Life Insurance Company Income Tax Act of 1959, § 804(b) (1).[5]

■ The precise question before us was considered by the Tax Court in General American Life Insurance Company, 1956, 25 T.C. 1265. That court decided that prepayment charges are in reality an additional fee for the use of the lender's money for a shorter period of time than originally agreed upon, and that this fee represents the generally higher cost of a short-term, as opposed to a long-term loan. The charges are part of the compensation to the lender for the use of money. Deputy v. du Pont, 308 U.S. 488, 498, 60 S.Ct. 363, 84 L.Ed. 416; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560–561, 52 S.Ct. 211, 76 L.Ed. 484. They are thus directly related to the economic cost of borrowing money and are not merely incidental to the loan transaction, but fall within the statutory term "interest."

This result conforms to the general object of those who formulated the Revenue Act of 1921. The Congress was approaching the problem of income taxation of life insurance companies from the standpoint of "investment income," and this income was to be the basis of the tax.[6] We conceive of no reasonable

---

2. I.R.C. (1954 § 803(a) (2): "Gross Income.—The term 'gross income' means the gross amount of income received or accrued during the taxable year from interest, dividends and rents."

3. Helvering v. Oregon Mutual Life Ins. Co., 311 U.S. 267, 268–269; 61 S.Ct. 207, 85 L.Ed. 180; National Life Insurance Co. v. United States, 277 U.S. 508, 522–524, 48 S.Ct. 591, 72 L.Ed. 968 (dissenting opinion of Mr. Justice Brandeis);

Subcomm. on Taxation of Life Insurance Companies of House Comm. on Ways and Means, Report on Taxation of Life Insurance Companies 4–12, 21–36 (1955).

4. 42 Stat. 227.

5. P.L. 86–69, 73 Stat. 112.

6. S.Com. on Finance, 67th Cong., 1st Sess., Hearings on H.R. 8245, 83–84, 90 (1921). The excerpts are from the testimony of Dr. T. S. Adams, Tax Advisor of the

distinction between prepayment and other charges for the use of money from the point of view of whether they are part of investment income. It would not be consistent with the broad statutory language of § 201(c) to give the term "interest" the narrow definition plaintiff seeks.[7] Prepayment and other interest charges are both received for the use of the company's capital and their rate is dependent in part on the length of time for which the capital is to be used. The 1956 amendments to the Code [8] modified the definition to specifically indicate that it includes prepayment charges. We do not view these amendments as working any substantial change in the scope of the statute in regard to this problem.

During the thirty-five years the § 201(c) definition of life insurance company income was in effect, little authority accumulated on what is encompassed within the statutory term interest. Although the statute is in broad terms, it was not supplemented by regulations or revenue rulings. We have inquired of counsel as to the practice of the Commissioner and within the industry during the twenty-nine year period between the passage of the Revenue Act of 1921 and 1950, the first year here litigated. Plaintiff asserts, and we do not understand defendant to deny, that it was consistent and unchallenged practice of the plaintiff and other life insurance companies from 1921 to 1950 to exclude prepayment receipts from taxable income. There are several other cases involving years prior to the 1956 amendments presently in litigation, but all have been brought in recent years, indeed all have been brought since the statutory definition was amended.[9]

■ The failure of the Commissioner to assert the taxability of these payments.

---

Treasury Department. Dr. Adams was the only witness on the bill before the Senate Committee and was the only witness called by the House Committee to discuss the *detailed provisions of the Act.* Both committees looked to him for an authoritative explanation of the Act.

"Dr. Adams. Mr. Chairman, we left off at page 93, section 242. Gentlemen, the scheme in general in section 242 is this: It is to apply a tax on life insurance .companies to make it applicable to investment income. Under the present law the premiums paid by a life insurance policyholder are deemed to be ac*tual income by the life insurance company.*

＊     ＊     ＊     ＊     ＊

It has been suggested—and I think it is obviously sound—that the only true basis of income of a life insurance company is its investment income—interest, dividends, and rents which it receives.

＊     ＊     ＊     ＊     ＊

"Senator McCumber. Will you repeat again just how you propose to tax them?

"Dr. Adams. The scheme of taxation *starts by defining their gross income as* investment income, namely, their incomes from dividends, rents, etc. Then there are recorded against that certain deductions, which I will read.

＊     ＊     ＊     ＊     ＊

"Dr. Adams. No; the other taxes they do not take. The only taxes they deduct are those connected with their investment income. Taxes based upon collection of premiums are not allowed as deductions.

"Senator McCumber. Why?

"Dr. Adams. Because we are taxing only the investment end of their business."

7. Helvering v. Midland Mutual Life Insurance Co., 300 U.S. 216, 223, 57 S.Ct. 423, 81 L.Ed. 612.

8. 70 Stat. 36, 39, § 803(b):
   *"Gross Investment Income.*—For purposes of this part, the term 'gross investment income' means the sum of the following:
   "(1) The gross amount of income received or accrued from—
   "(A) interest, dividends, rents, and royalties,
   "(B) the entering into of any lease, mortgage, or other instrument or agreement from which the life insurance company derives interest, rents, or royalties, and
   "(C) the alteration or termination of any instrument or agreement described in subparagraph (B).
   "(2) ＊ ＊ ＊"

9. The Government has referred us to two civil refund suits now pending: Northwestern Mutual Life Ins. Co. v. United States, No. 57-C-73, D.C.E.D.Wis.; and John Hancock Mutual Life Ins. Co. v. United States, No. 59-243-M, D.C.Mass. In addition, the Government has raised the issue as a defense in two cases pending before this Court: Metropolitan Life Ins. Co., No. 79-59, and Prudential Insurance Co. of America, No. 55-59.

for over a generation tends to support the inference that these payments were not considered within the statutory term "interest." The want of assertion of power by those who presumably would be alert to exercise it has been considered significant in determining whether such power was actually conferred.[10] But we do not consider this negative inference sufficiently persuasive to form a basis for the construction of this statute sought by petitioner in view of the statutory purpose underlying income taxation of life insurance companies. We know of no positive evidence in the form of rulings, regulations, or requests to Congress for an extending amendment to the statute, leading us to the conclusion that any failure to assert a claim to these taxes was the result of a conscious decision on the part of the Commissioner.[11] We decline to base a decision which would run against what we conceive to be the grain of the statutory scheme and the commonly understood concept of interest on evidence which is at least as consistent with the view that there was never any consideration of this problem as it is with a conscious decision by the Commissioner that it was beyond the purview of the statute to tax these prepayment charges.[12]

The defendant's motion for partial summary judgment is granted, plaintiff's motion is denied. The causes of action stated in paragraphs six and seven of each of plaintiff's complaints are dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of these cases.

LITTLETON, Judge (Retired) (concurring).

Section 2 of the Life Insurance Company Tax Act for 1955, 70 Stat. 36, 39, which amended section 803 of the 1954 Internal Revenue Code, provides in part as follows:

"(b) *Gross Investment Income*— For purposes of this part, the term 'gross investment income' means the sum of the following:

"(1) The gross amount of income received or accrued from—

"(A) interest, dividends, rents, and royalties,

"(B) the entering into of any lease, mortgage, or other instrument or agreement from which the life insurance company derives interest, rents, or royalties, and

"(C) the alteration or *termination of any instrument or agreement described in subparagraph (B).* [Emphasis supplied.]"

The report [13] of the House Committee on Ways and Means which accompanied

---

10. See *Federal Trade Commission v. Bunte Bros.*, 312 U.S. 349, 352, 61 S.Ct. 580, 85 L.Ed. 881, where an amendment to grant the challenged power had been sought by the Commission; and *Federal Power Commission v. Panhandle Eastern Pipeline Co.*, 337 U.S. 498, 513–514, 69 S.Ct. 1251, 93 L.Ed. 1499, where the practice of selling gas leases had been carried out by gas companies without Power Comm'n action to forbid it.

11. Rev.Rul. 55–12, 1955–1 Cum.Bull. 259, holds that a penalty payment is not interest under § 23(b) of the 1939 I.R.C., 26 U.S.C.A. § 23(b). A deduction for the prepayment charge as a business expense was allowed. From the taxpayer's viewpoint this had the same effect as an interest deduction. This ruling did not consider the insurance company section here involved. Moreover, it was revoked on the authority of the General American case. Rev.Rul. 57–198, 1957–1 Cum.Bull. 94.

12. See *Estate of Sanford v. Com'r*, 308 U.S. 39, 52–53, 60 S.Ct. 51, 84 L.Ed. 20; *Baltimore & Ohio Ry. Co. v. Jackson*, 353 U.S. 325, 330–331, 77 S.Ct. 842, 1 L.Ed. 2d 862.

13. H.Report No. 1098 (to accompany H.R. 7201), 84th Cong., 1st sess. (dated July 11, 1955). U.S.Cong. and Adm.News, 84th Cong.2d sess., 1956, vol. 2, p. 2253, 2277.

this Act when it was sent to the House of Representatives contains the following statements on page 6:

"The gross income of a life insurance company under present law is defined as interest, dividends, and rents. *This definition has been expanded* by including (1) royalties; (2) certain amounts received in connection with entering into, altering, or terminating agreements such as leases and mortgages; and (3) income derived from the operation of a noninsurance business. Royalties are considered to be similar to rents. Similarly, the receipts in connection with certain agreements are considered similar to the income received under the agreements. These amounts would include, for example, a bonus on entering into a lease and a penalty for early repayment of a mortgage.

\* \* \* \* \* \*

"Where appropriate, *these modifications* of the *definition of investment income* have also been applied to casualty insurance companies. For mutual casualty companies *there are added* to the present definition of income royalties, payments in connection with agreements, and income from a noninsurance business." [Emphasis supplied.]

Plaintiff vigorously urges that this language indicates that the Congress, in 1955, understood that the prior law did not include prepayment penalties such as those with which we are here concerned within the definition of "interest." I think that there is sufficient force to this contention to merit our consideration, although I do not find it sufficient to overcome the reasons, discussed in the opinion of the majority, which lead to the conclusion that these prepayment "penalties" are, in fact, interest, or a part of the compensation which is paid the lender for the use of its money. As was noted by the Tax Court in General

American Life Insurance Company, 25 T.C. 1265, 1267, these penalty charges are, in substance, "an additional interest charge for the use of such money for such shorter period."

The force of the language in the legislative history of the 1955 Act is considerably lessened, I think, by the fact that it was language used by a Congress many years after the enactment of the provisions which plaintiff seeks to have it interpret. At most, it is indicative of what the later Congress thought the prior Congress had intended. Such an interpretation has very little, if any, significance. Rainwater v. United States, 1958, 356 U.S. 590, 593, 78 S.Ct. 946, 2 L.Ed.2d 996. Cf. United States v. United Mine Workers of America, 1947, 330 U. S. 258, 281–282, 67 S.Ct. 677, 91 L.Ed. 884 and Fogarty v. United States, 1950, 340 U.S. 8, 13–14, 71 S.Ct. 5, 95 L.Ed. 10. Also, it should be noted that the legislative history of the 1955 Act is not free of indications that Congress may have been of the opinion that it was not expanding the prior law with respect to the meaning of interest. For example, on page 10 of the House Ways and Means Committee's report, supra, appears the following sentence:

"*It is made clear* that income includes the gross amount received in conjunction with the making of any lease, mortgage, or other instrument or agreement from which the life insurance company will derive interest, rents, or royalties, and the alteration or termination of any such lease," etc. [Emphasis supplied.]

Further, in the corresponding report of the Senate Committee on Finance,[14] at page 6, the language repeats *verbatim* the language of page 6 of the House Committee report quoted above, *except*, that this report says that this definition, of gross income, has been *"changed by expressly including \* \* \*"* certain amounts, where the House report had said that the definition had been *"ex-*

14. S.Report No. 1571 (to accompany H.R. 7201), 84th Cong., 2d sess. (dated February 23, 1956).

*panded by including"* those amounts. It is thus apparent that the Congress was not of one mind with respect to its interpretation of the prior law, and we cannot accept any indication from the legislative history of the 1955 Act as conclusive.

Laramore and Madden, JJ., dissented.