## GENERAL FOODS CORPORATION

### v.

### The UNITED STATES.

### No. 70–73.

United States Court of Claims.

Jan. 28, 1976.

Davis, J., concurred in the result and filed opinion.

David I. Granger, Washington, D. C., atty. of record, for plaintiff. Harold D. Murry, Jr. and Clifford, Warnke, Glass, McIlwain & Finney, Washington, D. C., of counsel.

Richard F. Treacy, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D. C., for defendant. Theodore D. Peyser and Donald H. Olson, Potomac, Md., of counsel.

Before LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

### OPINION

KASHIWA, Judge.

This action comes before us on a stipulation of facts. The essential facts stipulated are recited below. Each of the parties claims that it is entitled to judgment on said stipulated facts. We hold for the defendant and against the plaintiff for reasons hereafter stated.

This is an action arising under the Internal Revenue Code of 1954 for the tax-

able year 1959, beginning April 1, 1958, and ending March 31, 1959. Since Section 1232 of the Internal Revenue Code of 1954 is the center of discussion, we shall first quote by footnote its relevant portions.[1]

Plaintiff, General Foods Corporation, is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business, at White Plains, New York. The stipulation shows that General Foods Corporation's principal business is the production and sale of a wide variety of food and grocery products, many in package form under nationally advertised brand names. General Foods Corporation is not now, nor has it ever been, a dealer in securities. During the taxable year 1959, plaintiff held promissory notes with no stated interest issued by various corporations. The notes, commonly referred to as commercial paper, were non-registered bearer instruments containing an unconditional promise to pay a specified amount on a specified date at a specified place. Plaintiff purchased each of the notes from the issuer or from Goldman, Sachs & Company, a dealer in securities, at an amount less than its face value. The notes were held by plaintiff for periods ranging from 43 days to 181 days. The plaintiff held each note for a period less than six months and at maturity received the face amount from the issuer. Plaintiff retired all of the notes in the taxable year 1959. The notes were purchased by the plaintiff for investment and were not property of a type that would be held in inventory or for sale to customers in the normal course of business. All of the notes involved in this case were

1. SEC. 1232. BONDS AND OTHER EVIDENCE OF INDEBTEDNESS.

"(a) *General rule.*—For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof—

"(1) *Retirement.*—Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).

"(2) *Sale or exchange.*—

"(A) *General rule.*—Except as provided in subparagraph (B), upon sale or exchange of bonds or other evidences of indebtedness issued after December 31, 1954, held by the taxpayer more than 6 months, any gain realized which does not exceed—

"(i) an amount equal to the original issue discount (as defined in subsection (b)), or

"(ii) if at the time of original issue there was no intention to call the bond or other evidence of indebtedness before maturity, an amount which bears the same ratio to the original issue discount (as defined in subsection (b)) as the number of complete months that the bond or other evidence of indebtedness was held by the taxpayer bears to the number of complete months from the date of original issue to the date of maturity,

"shall be considered as gain from the sale or exchange of property which is not a capital asset. Gain in excess of such amount shall be considered gain from the sale or exchange of a capital asset held more than 6 months.

"(B) *Exceptions.*—This paragraph does not apply to—

"(i) obligations the interest on which is not includable in gross income under section 103 (relating to certain governmental obligations), or

"(ii) any holder who has purchased the bond or other evidence of indebtedness at a premium.

"(C) *Double inclusion in income not required.*—This section shall not require the inclusion of any amount previously includible in gross income.

"(b) *Definitions.*—

"(1) *Original issue discount.*—For purposes of subsection (a), the term 'original issue discount' means the difference between the issue price and the stated redemption price at maturity. If the original issue discount is less than one-fourth of 1 percent of the redemption price at maturity multiplied by the number of complete years to maturity, then the issue discount shall be considered to be zero. For purposes of this paragraph, the term 'stated redemption price at maturity' means the amount fixed by the last modification of the purchase agreement and includes dividends payable at that time."

\* \* \* \* \* \*

[As amended through 1959.]

issued after December 31, 1954, and before May 27, 1969. The amount received by the plaintiff on retirement of each of the notes which exceeded the amount paid by plaintiff for the note was original issue discount; no part of that amount was attributable to market fluctuations as opposed to the passage of time.

On its Federal income tax return for the taxable year 1959, beginning April 1, 1958, and ending March 31, 1959, plaintiff reported short-term capital gains of $608,598.99. This was the amount received over and above the purchase prices from the retirement at maturity of the total of $90,750,000 non-interest-bearing corporate notes purchased by the plaintiff at a discount and held for less than six months. During the taxable year 1959 plaintiff had net capital loss carryovers from the prior years in the amount of $518,840.74. There is no dispute as to this loss carryover. Plaintiff claims that it is entitled to deduct the loss carryover from the above-mentioned gain of $608,598.99 because the gain is short-term capital gain.

On October 29, 1965, the Commissioner of Internal Revenue mailed to the plaintiff a statement of tax due, assessing a deficiency in income taxes for the taxable year 1959 in the amount of $345,638 plus interest. Plaintiff paid this amount plus interest on November 8, 1965. The amount of $208,291 of this deficiency assessment resulted from the Commissioner treating as interest income rather rather than as short-term capital gain the amount of $608,598.99 received by plaintiff over and above the purchase prices on the retirement at maturity of the non-interest-bearing corporate notes purchased by the plaintiff at a discount for investment and held for less than six months. On November 6, 1967, plaintiff filed a claim for refund of this amount of $208,291 plus the interest paid thereon together with interest as provided by law, representing that part of the assessed deficiency attributable to treating as interest income rather than short-term capital gain the amounts over and above the purchase prices, received by plaintiff on the retirement of the corporate notes. On March 1, 1971, the Commissioner of Internal Revenue disallowed in its entirety plaintiff's claim for refund. This action for refund was filed in this court on February 27, 1973.

Both parties agree that the sole issue presented is whether gain attributable to original issue discount on evidences of indebtedness issued after December 31, 1954, and before May 28, 1969, and held by plaintiff for periods of not more than six months is taxable as short-term capital gain on the retirement of the indebtedness.

The decision in this case rests, as we shall hereafter show, upon Section 1221 but since plaintiff's arguments center on Section 1232, we shall first examine Section 1232. Plaintiff claims that Section 1232 gives capital treatment to the gain in this case. Defendant, on the other hand, states that Section 1232 is not relevant to the original issue discount herein since Section 1232 only deals with notes which are capital assets in the hands of the taxpayer and since original issue discount under case law is not a capital asset, Section 1232 does not apply.

We shall first discuss the history of Section 1232. Section 206(a)(1) of the Revenue Act of 1921, c. 136, 42 Stat. 227, 232, defined the term "capital gain" as "taxable gain from the sale or exchange of capital assets * * *." This provision, without material change, was reenacted by Section 208(a)(1) of the Revenue Act of 1924, c. 234, 43 Stat. 253, 262; by Section 208(a)(1) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 19; by Section 101(c)(1) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 811; and by Section 101(c)(1) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 191.

The question arose as to whether, under these statutes, a redemption (retirement) of bonds constituted a sale or exchange within the meaning of that provision and successor statutes. A conflict of judicial decisions[2] on the matter led Congress to enact Section 117(f) of the

---

2. See *Fairbanks v. United States,* 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855 (1939).

Revenue Act of 1934, c. 277, 48 Stat. 680, 715, which is the predecessor of Section 1232(a)(1). The addition of that provision assured that the retirement of notes would constitute an exchange.

While Section 117(f) served to resolve the question of whether the *retirement* of a note constituted a "sale or exchange," it created a new round of litigation as to whether gain attributable to original issue discount was an amount received in exchange for a capital asset and, consequently qualified for long-term capital gain treatment. In *Commissioner of Internal Revenue v. Caulkins,* 144 F.2d 482 (6th Cir. 1944), the Sixth Circuit read Section 117(f) to permit long-term capital gain treatment for the $5,000 gain realized, functionally, as original issue discount. The court noted (at 484) that if the application of Section 117(f) resulted in inconsistencies and inequalities, "the correction of this defect in the operation of the statute is for Congress and not for the courts." The Supreme Court in *United States v. Midland-Ross Corp.,* 381 U.S. 54, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965), subsequently disagreed with the holding of *Caulkins* that the proceeds received upon a face-amount certificate cannot be divided into separate increments which represent interest income and capital gain after other courts, including this court, refused to follow the rationale of the Sixth Circuit. See *Pattiz v. United States,* 311 F.2d 947, 160 Ct.Cl. 121 (1963); *Commissioner of Internal Revenue v. Morgan,* 272 F.2d 936 (9th Cir. 1959); *Rosen v. United States,* 288 F.2d 658 (3d Cir. 1961); *United States v. Harrison,* 304 F.2d 835 (5th Cir. 1962), *cert. denied,* 372 U.S. 934, 83 S.Ct. 881, 9 L.Ed.2d 765 (1963).

The legislative history of the revised version of Section 117(f) (Section 1232) indicates that Congress chose to heed the admonition of the court in *Caulkins* to correct, at least partially, a possible defect in the statute which, under the holding of *Caulkins,* allowed the issuing corporation an interest deduction for original issue discount, but taxed the holder at more favorable long-term capital gain rates if the notes were held more than six months. The following language of

the Senate Report accompanying the enactment of Section 1232 of the 1954 Code graphically illustrates the situation which Congress faced at the time (S.Rep. No.1622, 83d Cong., 2d Sess. 112 (1954), U.S.Code Cong. & Admin.News 1954, pp. 4629, 4745):

(C) *Bonds and Other Debt (sec. 1232)*

(1) *House changes accepted by committee*

Under section 117(f) of present law, when a corporate or Government bond in registered form or with coupons attached is retired the transaction is treated as a sale or exchange. There is some uncertainty as to the status of proceeds in these transactions, i. e., as capital gain or as interest income where the bond or other evidence of indebtedness has been issued at a discount (see I.T. 3486, 1941–2, C.B. p. 76, as compared with *Comm. v. Caulkins* [6 Cir.], 144 F.2d 482). In these cases, that part of the amount received on a sale or exchange which may represent a partial recovery of discount on original issue is a form of interest income and in fact is deductible as an interest payment by the issuing corporation.

Effective with respect to bonds issued after December 31, 1954, the House bill removes doubt in this area by providing that any gain realized by the holder of a bond attributable to the original issue discount will be taxed as ordinary income. * * *

The solution to the problem perceived by Congress as a result of *Caulkins* was a limited one. Together with other technical amendments to the old Section 117(f), which amendments have no effect on the instant problem, Congress added subsection (a)(2) to Section 1232 to plug the revenue loss resulting from the allowance, under *Caulkins,* of long-term capital gain treatment.

Congress reenacted most of the text of Section 117(f) as Section 1232(a) of the 1954 Code and specifically added the limiting language "which are capital assets" to the language "bonds, debentures, notes, or certificates or other evidences

of indebtedness." It explained this addition as follows (S.Rep.No.1622, *supra,* at 434, U.S.Code Cong. & Admin.News 1954, at 5077):

Section 117(f) does not itself extend capital-gain treatment to any transaction but simply provides one of several requirements for such treatment on retirement of certain securities. Paragraph (2) of this section [Section 1232], however, provides specifically for capital-gain treatment and, therefore, the phrase is inserted in the first sentence of this section to the effect that this section only applies to bonds and other evidences of indebtedness *which are capital assets* in the hands of the taxpayer. * * * [Emphasis supplied.]

We turn now from the history to the present positions of the parties. Plaintiff first argues that Section 1232(a)(1) makes the retirement of these notes equal to an exchange. Since the section does not provide for special treatment of original issue discount for notes held six months or less as it does for original issue discount on notes held more than six months in Section 1232(a)(2), notes held for six months or less fall under Section 1232(a)(1). Their retirement is treated as an exchange and an exchange of a capital asset results in capital gain.

This is the point at which the parties separate. The defendant states that Section 1232(a)(1) does not apply; in fact, none of Section 1232 applies. In Section 1232(a) the general rule refers to notes "which are capital assets in the hands of the taxpayer." Defendant argues that under case law the original issue discount is separable from the note and is not a capital asset. Since Section 1232 is only applicable to capital assets,

it does not apply to original issue discount on notes held for six months or less. Therefore, we must examine the case law to determine how this item should be treated.

It has been held by the Supreme Court and other courts that an item of ordinary income derived from an income-producing capital asset retained its character even though sold as part of property which was a capital asset.[3] In *United States v. Midland-Ross Corp., supra,* the Supreme Court held that original issue discount was ordinary income and not capital gain. The Court held as follows at 381 U.S. 56–57, 85 S.Ct. at 1309:

* * * Although original issue discount becomes property when the obligation falls due or is liquidated prior to maturity and § 117(a)(1) defined a capital asset as "property held by the taxpayer," we have held that

"not everything which can be called property in the ordinary sense and which is outside the statutory exclusions qualifies as a capital asset. This Court has long held that the term 'capital asset' is to be construed narrowly in accordance with the purpose of Congress to afford capital-gains treatment only in situations typically involving the realization of appreciation in value accrued over a substantial period of time, and thus to ameliorate the hardship of taxation of the entire gain in one year." *Commissioner [of Internal Revenue] v. Gillette Motor Co.,* 364 U.S. 130, 134, 80 S.Ct. 1497, 1500, 4 L.Ed.2d 1617.

See also *Corn Products [Refining] Co. v. Commissioner [of Internal Revenue],* 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100

---

3. *Watson v. Commissioner of Internal Revenue,* 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232 (1953) [profit from sale of an orange grove attributable to unmatured crop was ordinary income]; *Commissioner of Internal Revenue v. Gillette Motor Transport, Inc.,* 364 U.S. 130, 80 S.Ct. 1497, 4 L.Ed.2d 1617 (1960) [award for wartime possession of trucking company by Government was rental income and not capital gain from involuntary conversion]; *Commissioner of Internal Revenue v. P. G. Lake, Inc.,* 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958) [consideration for assignment of oil

payment right carved out from a larger mineral interest producing ordinary income was held to be taxable as ordinary income]; *Tunnell v. United States,* 259 F.2d 916 (3d Cir. 1958) [proceeds of sale of interest in law partnership, to the extent attributable to accounts receivable, were taxable as ordinary income]; *Fisher v. Commissioner of Internal Revenue,* 209 F.2d 513 (6th Cir. 1954), *cert. denied,* 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136 [proceeds of sale of notes representing defaulted interest were ordinary income].

L.Ed. 29. In applying this principle, this Court has consistently construed "capital asset" to exclude property representing income items or accretions to the value of a capital asset themselves properly attributable to income. * * * [Footnote omitted.]

In an earlier decision in *Pattiz v. United States, supra,* this court held as follows:

We think the discount at which these notes were sold was in lieu of the payment of interest on them, and that the difference in the amount paid for them and the amount at which they were redeemed was ordinary income. In our opinion it was not intended by § 117(f) of the Internal Revenue Code of 1939 to treat it as a capital gain [311 F.2d at 950, 160 Ct.Cl. at 128].

Judge Whitaker in his *Pattiz* opinion examines the relevant cases of several circuits and comes to the conclusion that Section 117(f), the predecessor of Section 1232(a)(1), was intended to cover capital gain resulting from the retirement of a note in contrast to original issue discount gain representing compensation for the use of money.

That decision agrees with the Third Circuit's conclusion in *Rosen v. United States, supra.* In *Rosen* the taxpayer argued that Section 1232(a)(1) was an overriding statute which prevented original issue discount from being taxed as interest under Section 61. The court at 661 stated the issue to be:

* * * whether the requirement of Section 1232(a)(1) that amounts received on retirement of certain "evidences of indebtedness shall be considered as amounts received in ex-

change therefor" is tantamount to saying that the entire increment realized in such an exchange must be taxed as capital gain rather than ordinary income.

The court then looked at the tax treatment of fully earned increments upon the sale or exchange of capital assets and concluded that the general rule applies: the right to receive ordinary income from a capital asset is not changed into capital gain upon the sale of that asset together with the right. Section 1232(a)(1) did not abrogate that rule but, rather, provided for capital treatment for the capital increment which was realized upon retirement.

■ Plaintiff seizes upon a sentence in a Senate Committee on Finance Report to the Tax Reform Act of 1969, Pub.L. No.91–172, 83 Stat. 487,[4] to argue that Section 1232 was intended to overrule *Midland-Ross, supra.* This statement was made without any basis in the 1954 version of Section 1232. The views of a subsequent Congress as to the meaning of ambiguous language of a previous Congress do not carry great weight.[5] An attempt to amend legislation of a previous Congress by Committee Report must be rejected.

■ Plaintiff also states that it should prevail because the Commissioner unlawfully discriminated in favor of similarly situated taxpayers. The basis of this claim is that the Commissioner failed to tax as ordinary income original issue discount on evidences of indebtedness held for six months or less by nonresident alien individuals and foreign corporations. In plaintiff's claim for refund no mention is made of a claim of unlawful

---

4. S.Rep.No.91–552, 91st Cong., 1st Sess. (1969) at 148:

"* * * In * * * [the case of Government evidences of indebtedness or in the case of pre-October 10, 1969, corporate evidences of indebtedness] gain on the sale or exchange of a bond or other evidence of indebtedness which is a capital asset in the hands of the taxpayer but which has not been held by the taxpayer for more than 6 months is to be treated as a short-term capital gain as under present law."

5. *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960); *United States v. Philadelphia National Bank,* 374 U.S. 321, 348–49, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963); *Waterman Steamship Corp. v. United States,* 381 U.S. 252, 269, 85 S.Ct. 1389, 14 L.Ed.2d 370 (1965); *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); *Brown v. United States,* 426 F.2d 355, 357, 192 Ct.Cl. 203, 210 (1970); and *Humble Oil & Refining Co. v. United States,* 442 F.2d 1362, 1369, 194 Ct.Cl. 920, 932 (1971).

discrimination. Accordingly, this court is without jurisdiction to rule upon a claim not set out in plaintiff's claim for refund. See Section 7422(a) of the 1954 Code and Treas.Reg. § 301.6402–2(b)(1) (1956); *Union Pacific R. R. v. United States,* 182 Ct.Cl. 103, 108, 389 F.2d 437, 442 (1968), and the cases cited therein.

We find for the defendant and against the plaintiff. Plaintiff's petition is dismissed. Judgment is entered for the defendant and against the plaintiff.

DAVIS, Judge (concurring in the result):

My vote to dismiss the petition is not founded on the use in section 1232 of "capital assets," the primary purpose of which I take to be to separate securities held for investment from those held in the ordinary course of trade or business. Rather, I am moved by the simple fact that section 1232 fails to deal at all with original issue discount on securities held for no more than six months, and therefore must conclude that the applicable rule, even under the 1954 Code, was the "economic reality" of *United States v. Midland-Ross Corp.,* 381 U.S. 54, 85 S.Ct. 1308, 14 L.Ed.2d 214 (1965), that such discount is equivalent to interest. Taxpayers can point to no part of section 1232 which lays down the treatment for original issue discount on bonds held for no more than six months. Subsection (a)(2)(A), as everyone agrees, is restricted on its face to evidences of indebtedness held for more than six months; subsection (a)(1) is no more than the equivalent of section 117(a)(4) of the 1939 Code which the Court in *Midland-Ross* held not a bar to treating original issue discount as ordinary income. The text of section 1232, in the initial 1954 Code, did not deal at all, as I read it,

with the problem of original issue discount on bonds retained no more than half-a-year.

I agree with the taxpayer that the Congress which enacted that section may well have thought that original issue discount on such securities would thereafter be dealt with as short-term capital gain. But that was because that Congress mistakenly believed that *Commissioner of Internal Revenue v. Caulkins,* 144 F.2d 482 (C.A.6, 1944)—which had held all original issue discount on bonds held for investment to be capital gain—would continue as good tax law except insofar as the rule was changed in section 1232 for the longer-term securities. And the probability is that that same Congress did not think it important to change the *Caulkins* rule for the no-more-than-six-months bonds because short-term capital gain is normally taxed at ordinary income rates. (The peculiar situation now before us does not seem to have been in anyone's mind.)[1] At any rate, it seems to me clear that the Congress which enacted the 1954 Code did not adopt, in section 1232 or another provision, any rule for original issue discount on evidences of indebtedness held for no more than six months; it simply left that subject uncovered by specific rule. The result is that, since Congress has not imbedded any part of *Caulkins* in the Code, we are required to apply the rule of *Midland-Ross* which superseded and overruled *Caulkins.* Congress is not legislating when, instead of laying down a statutory rule, it leaves a subject alone, even though it may be content to let the matter be covered by a lower-court decision which later happens to be set aside by the Supreme Court. *Cf. Helvering v. Hallock,* 309 U.S. 106, 119–22, 60 S.Ct. 444, 451–53, 84 L.Ed. 604, 612–14 (1940).[2]

1. There is no solid indication that the section 1232 Congress affirmatively desired that original issue discount on bonds held for no more than six months should be treated as capital gain even if *Caulkins* should be overturned by the Supreme Court.

2. The views of a later Congress on the earlier law have " 'very little, if any, significance.' " *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170, 88 S.Ct. 1994, 20 L.Ed.2d 1001

(1968). Therefore weight should not be given to the 1969 Senate report which said that "In * * * [the case of pre-1969 corporate indebtedness and Government bonds], gain on the sale or exchange of a bond or other evidence of indebtedness which is a capital asset in the hands of the taxpayer but which has not been held by the taxpayer for more than 6 months is to be treated as a short-term capital gain as under present law." S.Rep.No.91–552,

As for the claim of unlawful discrimination, I would rest squarely on the ground that the taxation of non-resident foreign taxpayers raises such different considerations that it cannot validly be compared, for equal protection purposes, to the taxation of domestic taxpayers.

---

91 Cong., 1st Sess. 148 (1969) (1969–3 Cum. Bull. 518).